UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONDEY CHANEY,
    Plaintiff,

    v.

CITY OF FRAMINGHAM,
CHRISTOPHER HENDRY,
GREGORY REARDON, and
VICTOR PEREIRA,
    Defendants.[2]

CIVIL ACTION No. 18-10413-MPK[1]

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (#29).

KELLEY, U.S.M.J.

I. Introduction.

Rondey Chaney alleges that three officers of the Framingham Police Department violated his civil rights by forcing him to remain naked from the waist down after his arrest. (#1-1 at 6.) He makes a claim under 42 U.S.C. § 1983 that Officer Christopher Hendry, Lieutenant Gregory Reardon, and Deputy Chief Victor Pereira[3] violated his Fourth, Fifth, and Fourteenth Amendment rights (Count I); that they acted with intent to coerce, threaten, or intimidate him in violation of the Massachusetts Civil Rights Act (MCRA) (Count II); he makes state tort claims

---

[1] With the parties' consent, this case has been assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 29 U.S.C. § 636(c). (#8.)

[2] The complaint included two unnamed officers, John Does 1 and 2. (#1-1 at 4.) Plaintiff voluntarily dismissed the claims against these two defendants. (#10.)

[3] At the time of this writing, Gregory Reardon is a lieutenant with the Framingham Police Department. In 2014 he was a sergeant. ((#30 at 6.) Victor Pereira is deputy chief of the Framingham Police Department. In 2014, he was a lieutenant. *Id*.

1

of invasion of privacy and intentional infliction of emotional distress (Count III); and he makes a negligence claim against the City of Framingham under the Massachusetts Tort Claims Act (MTCA) (Count IV). *Id.* at 6-8.

On July 30, 2019, defendants moved for summary judgment on all counts. (#29.) Plaintiff opposed. (#33.)

For the reasons that follow, defendants' motion for summary judgment as to Counts I-III is denied, and the motion is allowed as to Count IV.

## II.  Facts.

For purposes of summary judgment, the facts are presented in the light most favorable to Chaney, the nonmoving party. *Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 855 (1st Cir. 2008). The facts below are undisputed unless otherwise indicated.[4]

At the time of this incident, Chaney was on "interstate probation," meaning he resided in Massachusetts, but was on probation for a Connecticut state-court sentence stemming from a robbery charge. (#33-1 at 2.) He was being supervised by the Worcester Superior Court and was subject to electronic monitoring. (#30 at 2; #33-1 at 2.) On the morning of November 24, 2014, an arrest warrant issued for him because his electronic monitoring device was apparently malfunctioning and was not giving his probation officer a signal that indicated his location. (#33-1 at 2.) At approximately 6:50 a.m., Chaney and his girlfriend, Kate Gast, were asleep in Chaney's apartment when Hendry, Reardon, and an officer who was not named as a defendant, Sean Wilson, knocked on his door to arrest him. (#31-9 at 27.)

---

[4] The court takes the facts from defendants' statement of material facts and attachments and plaintiff's statement of facts. (#31; #33-1).

Chaney, who had been asleep naked, put on a sleeveless t-shirt and wrapped a towel around his waist before answering the door. *Id*. Gast walked out of the bedroom and witnessed the interaction between Chaney and the defendants, as did Chaney's roommate Leonardo Reyes, who is deaf. (#31-7 at 12; 24.) The officers entered the apartment and informed Chaney that they were there to arrest him because of the problem with his electronic monitoring device. (#31-4 at 55; 56; #31-9 at 44.) Gast retrieved Chaney's driver's license and some clothes from the bedroom, and the officers handcuffed Chaney. (#31-4 at 63; #31-9 at 48.) Chaney submitted to arrest without resistance. (#31 at 2-3.)

Chaney testified at his deposition that he "respectfully requested" to put on clothes prior to leaving the apartment because it was cold outside and because he was being arrested. (#31-4 at 63, 64.) Gast testified that she also repeatedly asked the police officers if Chaney could put on clothing. *Id*. at 68; #31-9 at 46. According to Chaney and Gast, these requests were denied. *Id*. at 65, 68.

Hendry and Reardon, in contrast, assert that while in the apartment they "attempted to get [Chaney] to put on the pair of shorts several times, and he refused each time." (#31-2 at 2; #31-3 at 2.) Chaney and Gast denied this allegation in their depositions. (#31-4 at 100; #31-9 at 106.) Hendry stated that Chaney requested to have the handcuffs removed so he could get dressed, which the officers would not allow for safety reasons. (#31-3 at 2.) Chaney and Gast deny that Chaney made this request. (#31-4 at 101-102; #31-9 at 105.)

The three officers walked Chaney, who was wearing the towel, the sleeveless shirt, and no shoes, out of the apartment, down a public hallway, and into an elevator. (#31-2 at 2; #31-3 at 2; #31-9 at 52-53.) Reyes, Chaney's roommate, testified at his deposition that an old man was looking out from his door as Chaney was being escorted down the hallway (#33-1 at 5), although

3

defendants assert that no one was in the hallway other than the officers, Chaney, and Gast. (#31 at 3.) Defendants allege that Wilson carried a pair of shorts to the elevator. (#31-2 at 2; #31-8 at 2.) Chaney denies this. (#33-1 at 5.)

Using her cell phone, Gast video-recorded the officers and Chaney walking into the elevator. (#31-6; #31-9 at 51.) The video is marked as an exhibit to defendants' motion. (#31-6.) It is about thirteen seconds long. One can see in the video that while Chaney was in the elevator with the three officers, with his hands handcuffed behind him, Chaney's towel fell to the floor, leaving him wearing only the sleeveless shirt.[5] (#31 at 3; #31-4 at 87.) Chaney's shirt extended to his thighs and one cannot see his genitalia in the video. (#31 at 3; #31-6; #33-1 at 6.) Chaney agreed that the video does not show his genitalia, however, he asserts that one could nevertheless see his genitalia. (#33-1 at 6.)

Chaney stated at his deposition that after the towel fell off, the officers never offered him the towel or any clothing, and he remained naked below the waist as he walked from the elevator to a waiting police car; during the ride to the Framingham Police Station; while he was booked at the station; as he was transported to the Framingham District Court; and during his appearance before a judge at the courthouse, who dismissed his case and allowed him to go home. (#31-4 at 110-11, 114-16, 129-33, 155-56.)

Reardon and Wilson stated in affidavits that Chaney agreed to put shorts on in the elevator of the apartment building. (#31-2 at 3; #31-8 at 2.) Chaney denies this. (#31-4 at 103-104.)

---

[5] Hendry alleges that Chaney "shook or shimmied his hips" and caused the towel to fall off in the elevator. (#31-3 at 2-3; #31-5 at 2.) Chaney denies that he did this. (#31-4 at 103.)

Reyes, Chaney's roommate, testified that he saw Chaney's towel fall off in the elevator, and saw the officers put it back on him. (#33-1 at 11.) He said that when Chaney was being led to the waiting police car, he was wearing the towel. *Id*. He further said that Gast had a video of Chaney wearing the towel while outside the apartment building, and that he had watched the video with Chaney. *Id*. He said he thought the video had been lost. *Id*.

Gast stated that after the elevator doors closed, she went down the stairs, but by the time she got to the first floor, the officers had already taken Chaney out to the car, and so she did not see Chaney leaving the building. *Id*. at 6.

Chaney was escorted from the elevator to the waiting police car, which he estimated was located fifteen to forty feet from the building. *Id*. at 7, 11. Although Chaney did not remember seeing anyone between the time the elevator doors opened and he got in the police car, Gast said there was "more than one" person in the lobby of the building as Chaney was taken out. *Id*. at 7, 12. Reardon's involvement with Chaney ended when Chaney got into the car. *Id*. at 7. Hendry transported Chaney to the Framingham Police Station, which was about a ten-minute ride from the apartment building. *Id*.

At the police station, Chaney was booked by Pereira. *Id*. at 8. Pereira stated in an affidavit that Chaney was clothed during booking. *Id*. at 3. Chaney, in contrast, alleges that while booking him, Pereira asked him why he was naked from the waist down, and called the situation "unbelievable," stating that he wished he had something to offer with which Chaney could cover himself. (#31-4 at 115–16.) Hendry alleges that he was not involved with any events that took place after Chaney was booked at the Framingham Police Department. (#31-3 at 3.)

After Chaney was booked, he was taken to the Framingham District Court. (#33-1 at 9.) In preparation for transportation to the court, he was handcuffed to other male prisoners, and put

in a transport vehicle. *Id*. None of the individually-named defendants transported Chaney to the Framingham District Court and they had no involvement with Chaney's detention at the courthouse. *Id*.

Chaney returned to his apartment after the incident, wearing long pants and shoes that were not his own. (#31-7 at 37; #31-9 at 75.) He said he received the clothes from a law student as he was leaving the Framingham District Court, who gave him the clothes and a ride home.[6] (#31-4 at 155–56.)

### III.  Standard of Review.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the moving party bears the initial burden of averring the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). Once the moving party asserts the absence of a genuine issue of material fact, the non-movant must demonstrate the existence of a factual dispute with requisite sufficiency to proceed to trial. *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54–55 (1st Cir. 2006). "[I]mprobable inferences, conclusory allegations, or rank speculation" cannot alone defeat summary judgment. *Ingram v. Brink's, Inc.*, 414 F.3d 222, 229 (1st Cir. 2005).

In determining whether summary judgment is proper, courts view the record in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the

---

[6] Chaney's account of his being clothed by a law student as he was leaving the courthouse after his release from custody is in direct contradiction to what is stated in the complaint: that he was dressed by "one or more court employees" while in a holding cell in the courthouse. (#1-1 at 6.)

nonmovant's favor. *Burns v. Johnson,* 829 F.3d 1, 8 (1st Cir. 2016). Upon a party's motion, Rule 56 requires the entry of summary judgment where a party fails to establish the existence of any one essential element on which that party will bear the final burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)). "At summary judgment, 'the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Burns*, 829 F.3d at 8 (quoting *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

IV.  Discussion.

A. Count I:  42 U.S.C. § 1983 claim against individual defendants Hendry, Reardon, and Pereira.

Plaintiff's first claim alleges Fourth, Fifth, and Fourteenth Amendment violations under 42 U.S.C. § 1983. "Section 1983 provides a cause of action for a plaintiff to seek money damages from a defendant who acted under color of state law to deprive plaintiff of a right guaranteed by the Constitution or by federal law." *Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir. 2002) (citations omitted). A claim under § 1983 has two essential elements: "the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) (citation omitted). It is undisputed that defendants were acting pursuant to their official duties, so the only question here is whether their actions violated Chaney's constitutional rights.

7

The Supreme Court has interpreted the Fourth Amendment to include the right to be free from unjustified nudity during an arrest. *See L.A. Cty. Cal. v. Rettele*, 550 U.S. 609, 615 (2007). Under the requisite balancing test, defendants must show that a decision to not allow plaintiff to dress was reasonable in light of countervailing safety or security needs. *Id*. In *Rettele*, police officers executed a search warrant for a home in which the two plaintiffs were sleeping naked. *Id.* at 610. The officers forced plaintiffs to get out of their beds, and to remain standing naked for two to four minutes, until the room was secured and covering was provided. *Id.* at 611. The Supreme Court found that plaintiffs' Fourth Amendment rights had not been violated, because the orders by the officers were permissible "to protect the safety of the deputies[,]" as weapons could have been concealed in the bed. *Id.* at 614. The Court weighed the officers' reasonable need to secure the room against the embarrassment of forced nudity, and determined that because there was no allegation that the deputies "prevented [plaintiffs] from dressing longer than necessary to protect [the officers'] safety[,]" the officers' actions were objectively reasonable. *Id.* at 615.

Therefore, to prevail on summary judgment, defendants must show through undisputed facts that not permitting Chaney to dress was objectively reasonable because of security needs. *Rettele*, 550 U.S. at 615; s*ee Hill v. McKinley*, 311 F.3d 899, 909 (8th Cir. 2002) (holding that in context of inmate who was strapped to a restraining board, "[t]here was no legitimate security concern that required the officers to make [plaintiff] remain nude…"); *Hutchinson v. W. Va. State Police*, 731 F. Supp.2d 521, 537-42 (S.D. W.Va. 2010) (holding that it was unreasonable for police to leave plaintiff naked any longer than was necessary, i.e., more than a few minutes, to clear the residence of danger); *Armstead v. Township of Upper Dublin*, 347 F. Supp.2d 188, 195 (E.D. Pa. 2004) (holding that facts weighed "heavily toward objective unreasonableness"

where police marched a man outside of his home, "essentially naked from the waist down, in the cold rain, to the patrol car").

As set out above, Chaney and the defendants dispute the reason that Chaney ended up in the elevator with only a towel covering his lower half: Chaney asserts that the police would not allow him to put on clothes, while the officers say that Chaney refused to dress unless his handcuffs were removed. It will be for the jury to decide whom to believe, and whether on balance the officers' decision to take Chaney out of his apartment wearing only a towel, and then, taking the facts in the light most favorable to Chaney, not covering him up when the towel fell off, was reasonable under the Fourth Amendment. *See Amato v. Steele*, No. 13-cv-13094-IT, 2015 WL 3466395, at \*\*4-5 (D. Mass. June 1, 2015) (denying summary judgment where police arrested plaintiff in his home and then forced him to walk down driveway in view of others, and travel to police station naked from the waist down, leaving question for jury as to whether officers unjustifiably required him to remain partially naked). Because the outcome depends on the resolution of a factual dispute, this part of the claim survives summary judgment.

Defendants argue that they are entitled to qualified immunity. (#30 at 7.) The court applies a three-step process when evaluating qualified immunity claims: first, whether the claimant has alleged a violation of a constitutional right; second, whether the right was clearly established at the time of the alleged action; and if the first two parts are answered affirmatively, third, whether an objectively reasonable official would have believed that the action taken violated that clearly-established right. *Wilson v. City of Bos.*, 421 F.3d 45, 52 (1st Cir. 2005).

With regard to the first step of the analysis, Chaney has alleged a violation of a constitutional right, because the Supreme Court has interpreted the Fourth Amendment to provide protection from forced and unjustified nudity during an arrest. *Rettele*, 550 U.S. at 615.

9

The next question is whether this constitutional right was clearly established at the time of the alleged action, which it obviously was in 2014, as *Rettele* was decided in 2007. *See Amato*, 2015 WL 3466395, at *4 ("[I]t was clearly established prior to December 24, 2012 that forced nudity for a period longer than required to ensure officer safety and security would constitute an unreasonable seizure under the Fourth Amendment"); *Luster v. Ledbetter*, 647 F. Supp.2d 1303, 1310 (M.D. Ala. 2009) ("It is clear that a reasonable officer would have the common sense to know that such [an] unnecessary, deeply humiliating invasion of privacy is unreasonable.") In fact, because the right not to be unnecessarily naked is so obvious, many courts had recognized it prior to the Supreme Court's decision in *Rettele*. *See, e.g.*, *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991) ("[R]equiring an individual to sit naked while exposed to the cold January air [during a search of his home] would violate such individual's 'clearly established' rights"); *United States v. Di Stefano*, 555 F.2d 1094, 1101 (2d Cir. 1977) (pointing to an officer's "duty to find clothing for [arrestee] to wear or to permit her to do so"); *Armstead,* 347 F. Supp.2d at 196 (holding in 2003 that "an individual's right to be free from unreasonable seizures involving . . . forcible removal from one's home naked from the waist down was clearly established"). *Cf. United States v. Nascimento,* 491 F.3d 25, 50 (1st Cir. 2007) (citations omitted) ("When police encounter and arrest a partially clothed individual in his home, the need to dress him may constitute an exigency justifying the officers in entering another room in order to obtain needed clothing....It suffices to say that both human dignity and the New England climate counseled here in favor of a more complete wardrobe.").

Finally, the court considers the last factor: whether, under the facts here, an objectively reasonable official would have understood that he was violating plaintiff's right not to be unreasonably exposed. It is undisputed that plaintiff was removed from his home with his hands

handcuffed behind his back, with only a towel covering him below the waist. The towel, not surprisingly, fell off. According to plaintiff's account, he was not covered with the towel again, and was naked from the waist down while in custody. Taking these facts in the light most favorable to plaintiff, a reasonable jury, weighing the officers' safety considerations against the plaintiff's rights, might find that the officers were not justified in forcing plaintiff to leave his apartment covered only with a towel. Or, they could find that an objectively reasonable official would have known he was violating plaintiff's rights at least from the time the towel fell off in the elevator and was not replaced.[7] *See Amato*, 2015 WL 3466395, at *5 ("[A] reasonable officer would have known that, in the absence of safety justifications, refusing to allow a complaint arrestee to cover his genitalia and buttocks and requiring the arrestee to leave his home and walk in public while exposed was unreasonable under the Fourth Amendment."); *Armstead*, 347 F. Supp.2d at 196.

Defendants have not established they are entitled to qualified immunity, and their motion for summary judgment on plaintiff's § 1983 claim is denied.

B. <u>Count II: MCRA violation against defendants Hendry, Reardon, and Pereira</u>.

The MCRA is the state analog to § 1983, except that § 1983 requires state action, while the MCRA does not. Plaintiff alleges that defendants violated the MCRA when they "used their authority to coerce [him] into doing something he . . . had every right not to do–walk in public and in places frequented by strangers naked from the waist down." (#1-1 at 7; #33 at 4.)

---

[7] The court notes that plaintiff's facts in their entirety, including his account during his deposition of being transported to the Framingham District Court and appearing there before a judge in a state of undress, strain credulity. In addition, plaintiff has provided little or no corroboration for many parts of his story, and crucial elements of his account are contradicted by the deposition testimony of his roommate, Reyes. Nevertheless, it is not the court's job to make credibility determinations at this stage in the case.

The MCRA prohibits:

> any person or persons, whether or not acting under color of law, [to] interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth.

Mass. Gen. L. c. 12, §11H. "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA]." *Longval v. Comm'r of Corr.*, 535 N.E.2d 588, 593 (Mass. 1989); *see Goddard v. Kelley*, 629 F. Supp.2d 115, 129 (D. Mass. 2009) (finding that to argue "that the defendants assaulted the plaintiff in order to cause the plaintiff to give up his right to be free from excessive force . . . would torture the statute well beyond its plain meaning"); *Amato*, 2015 WL 3466395, at *5.

"Threat" in the context of the MCRA involves "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Planned Parenthood League of Mass., Inc. v. Blake*, 631 N.E.2d 985, 990 (Mass. 1994)). "Intimidate" involves "putting in fear for the purpose of compelling or deterring conduct." *Id*. "Coercion" is the "application to another of such force, either physical or moral as to constrain him to do against his will something he would not otherwise have done." *Id.* (quoting Webster's New Int'l Dictionary 519 (2d ed. 1959)).

Defendants argue that plaintiff's claim fails, because plaintiff does not show there was any threat, intimidation, or coercion, independent of his claim that his rights were violated. (#30 at 12–13.) However, plaintiff does sufficiently claim that by placing him under arrest and then not allowing him to cover himself, the officers interfered with his right to privacy through coercion. *See Amato*, 2015 WL 3466395, at *6 ("A jury could reasonably find on the evidence presented--namely, that [the officers] refused Amato's request to cloth himself, despite a lack of plausible safety concerns --that the officers' actions were intended to interfere with [plaintiff's]

12

right to privacy"); *Davis v. Rennie*, 264 F.3d 86, 112 (1st Cir. 2001) (finding that holding inmate down so another officer could hit him could be a coercive act under MCRA depriving inmate of his constitutional rights); *Swain v. Spinney*, 117 F.3d 1, 12 (1st Cir. 1997) (finding that jury could find that strip search of plaintiff was coercive act designed to weaken her perceived resistance to questioning). Summary judgment is not warranted on this claim.

C. <u>Count III: Invasion of privacy and intentional infliction of emotional distress against defendants Hendry, Reardon, and Pereira</u>.

1. *Invasion of privacy claim.*

Plaintiff claims that defendants "paraded [him] in public and in government building [sic] while in custody and at time [sic] in the presence or within the view of females," resulting in an invasion of his privacy. (#1-1 at 7.) The Massachusetts Privacy Act (MPA) establishes "a right against unreasonable, substantial or serious interference with . . . privacy." Mass. Gen. L. c. 214, §1B.[8]

"When determining whether an invasion of bodily privacy has violated the statute, the Massachusetts courts balance the individual's right of privacy with the interests involved when violating that privacy." *Hernandez v. Montanez*, 36 F. Supp.3d 202, 217 (D. Mass. 2014) (citation omitted); *see Spencer v. Roche*, 659 F.3d 142, 150 (1st Cir. 2011) (holding that a body cavity search "performed in accordance with constitutional requirements and that is otherwise reasonable does not constitute an actionable invasion of privacy under Massachusetts law"); *Webster v. Motorola*, 637 N.E.2d 203, 207 (Mass. 1994) (balancing interests of employer in screening employees against the bodily intrusion of a urinalysis test).

---

[8] The Supreme Judicial Court has found that despite the disjunctive "or," the phrase "unreasonable, substantial or serious" is inclusive, as § 1B "obviously was not intended to prohibit serious or substantial interferences which are reasonable or justified." *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 N.E.2d 912, 914 (Mass. 1991).

Because whether Chaney's nakedness was justified by a security interest is a question for the jury, as discussed above, summary judgment is not appropriate on this count. *Amato,* 2015 WL 3466395, at *6 (summary judgment denied on MPC count because "a jury could find that [plaintiff's] forced exposure was not reasonably justified by any countervailing interest").

Defendants raise a common law immunity defense. (#30 at 15.) "At common law, [] a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption." *Nelson v. Salem State Coll.,* 845 N.E.2d 338, 348 (Mass. 2006); *see Duarte v. Healy,* 537 N.E.2d 1230, 1234 n.5 (Mass. 1989). Here, on plaintiff's facts, a jury could find that defendants were not acting in good faith. Defendants' motion for summary judgment is denied.

2. *Intentional infliction of emotional distress claim.*

To establish a state law tort claim for intentional infliction of emotional distress (IIED), plaintiff must demonstrate (1) that defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that defendant's conduct was extreme and outrageous; (3) that defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress. *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994) (citation omitted).

The second factor, whether the conduct was extreme and outrageous, is the initial question and may be determined as a matter of law where appropriate. *Id.* The analysis begins by asking whether the conduct of any defendant was so extreme and outrageous "to go beyond all possible boundaries of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Foley v. Polaroid Corp.*, 508 N.E.2d 72, 82 (Mass. 1987). This question sets a high bar for making out an IIED claim, even at summary judgment. *See Santiago v. Keyes*,

890 F. Supp.2d 149, 159 (D. Mass. 2012) (dismissing an IIED claim where plaintiff's claim "boil[ed] down to [defendant's] decision not to investigate whether [p]laintiff had been falsely arrested"); *Tetrault v. Mahoney, Hawkes & Goldings*, 681 N.E.2d 1189, 1197 (Mass. 1997) (holding that summary judgment was warranted where no jury could find that evidence that wife asked husband to put his house in her name shortly before his death constituted extreme or outrageous conduct).

A claim will not succeed based on facts relating to mere insults, threats, or annoyances. *Foley*, 508 N.E.2d at 82. Nor is it enough that defendant's "conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id*. (internal quotations and punctuation omitted); *Barbosa v. Conlon*, 962 F. Supp.2d 316, 334 (D. Mass. 2013) (finding that officers' use of "excessive force, abusive language, and deliberate indifference to obvious medical needs" could be found "beyond the bounds of acceptable conduct"); *Sena*, 629 N.E.2d at 994.

Chaney proffers that Hendry and Reardon engaged in "extreme and outrageous" behavior by only allowing him to dress in a towel and then refusing to allow him to cover himself after the towel fell off in the elevator. With regard to Pereira, the evidence that his behavior was "extreme and outrageous" is less compelling, because according to Chaney, Pereira did show concern about his nudity, and expressed an interest in helping Chaney cover himself. (#31-4 at 115–116.) However, Pereira certainly could have provided Chaney with clothing, and his conduct could be seen by a jury as a continuation of the alleged violation of Chaney's rights by the first two officers.

In the end, the evidence, albeit thin, is sufficient to raise a genuine issue of material fact as to whether the officers' behavior meets the threshold of extreme and outrageous.

"[R]easonable minds could differ in assessing" the level of outrageousness of holding plaintiff in custody naked from the waist down. *Doe v. Town of Plymouth*, 825 F. Supp. 1102, 1110 (D. Mass. 1993) (although a "close issue," denying summary judgment where details of conversation in which defendant allegedly coerced plaintiff to reveal her HIV status on the telephone and then discussed her medication with others were in dispute, and "the necessary outrageousness of [defendant's behavior] was also disputed.") Therefore, it must be left for a jury to determine whether the officers' conduct was extreme and outrageous.

Similarly, plaintiff has presented sufficient facts to raise genuine issues on the remaining elements of his claim against the officers. On his version of the facts, plaintiff can prove that defendants should have known that their conduct would cause emotional distress. If plaintiff's facts are accepted by the jury, and the justifications defendants present found baseless, a reasonable jury could conclude that the officers' actions were taken with the intent to cause the plaintiff distress.

Plaintiff's facts on the third and fourth elements, that defendants caused his resulting distress and that the distress was severe, are adequate, but barely so. At his deposition, plaintiff recounted attending therapy, but "not because of that particular incident," stating, "I [saw] her for a variety of things going on. That was one of many things." (#31-4 at 164.) He also stated at his deposition that the distress and tearfulness he feels about the incident are caused by the incident. *Id.* at 165. This sufficiently connects defendants' actions to plaintiff's emotional response and precludes summary judgment. Concerning the severity of his emotional distress, plaintiff stated that remembering the incident is "unbearable" and causes him to weep, and in fact he broke down and wept during this portion of his deposition. *Id.* at 165-66; *see Wagenmann v. Adams*, 829 F.2d 196, 216 (1st Cir. 1987) (upholding a jury verdict compensating plaintiff for

16

IIED where the record was "replete with items reflecting the stress, fear, humiliation, embarrassment, anguish, and stigmatization" that plaintiff experienced); *Kibbe v. Potter*, 196 F. Supp.2d 48, 72 (D. Mass. 2002) (finding emotional distress severe where plaintiffs experienced "diarrhea, nervousness and anxiety," had to take time off from work, and hid in a locker room in order to avoid defendant).

Therefore, plaintiff has sufficiently supported the elements of a claim for IIED against defendants, and their summary judgment motion is denied.

D. Count IV: Negligence claim against the City of Framingham.

Plaintiff's fourth claim is against the City of Framingham under the MTCA, Mass. Gen. L. c. 258, for negligence in failing to train the officers. (#1-1 at 8.) The question of summary judgment on this claim is easily resolved, because on the record, Chaney presented no evidence about the officers' training, but simply argues that "it is reasonable to infer that the officers were not properly trained, supervised or disciplined to observe basic principles of constitutional rights and police work." (#33 at 5.) Defendants, in contrast, provided undisputed evidence in the form of affidavits from the officers as to their training, including training concerning arrest procedures. (#31 at 1-2.) As there is no factual support for the allegation that Framingham failed to properly train, supervise, or discipline the officers, summary judgment is granted on Count IV.

IV. Conclusion.

Defendants' motion for summary judgment is DENIED as to Counts I-III and GRANTED as to Count IV, plaintiff's claim of negligence against the City of Framingham.

/s/ M. Page Kelley
M. Page Kelley
December 3, 2019                              United States Magistrate Judge